## WOODEN v. STATE.

No. 8185—Opinion Filed May 14, 1918.

(173 Pac. 829.)

(Syllabus.)

**Municipal Corporations — Mayor's Nonenforcement of Ordinance—Removal.**

The charter of the city of Tulsa makes the mayor of said city the chief executive officer thereof, and imposes upon him the duty to see that all the laws of the city are enforced; in addition to which the chief of police is placed under his superior authority, and he is made a conservator of the peace with power to arrest in all cases. Ordinances of the city prohibiting the traffic in intoxicating liquors and gambling were openly and notoriously violated, of which the mayor had personal knowledge. Held, that it was the duty of the mayor to see that said ordinances were enforced, and for his willful failure to do so he might be removed from office.

Error from District Court, Tulsa County; Conn Linn, Judge.

F. M. Wooden was removed from his office of Mayor of the City of Tulsa, and he brings error. Judgment affirmed.

C. B. Stuart and Martin & Moss, for plaintiff in error.

S. P. Freeling, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

HARDY, J. Plaintiff in error, F. M. Wooden, was removed from the office of mayor of the city of Tulsa upon the grounds set forth in an accusation returned by the grand jury of Tulsa county. Plaintiff in error ·was· convicted· upon two grounds of said accusation, one of which charged him with the failure to enforce the ordinance

against the keeping and the sale of intoxicating liquor, and the other for the failure to enforce the ordinance against gambling and kindred offenses.

There is but one question·presented to us, which is: Did plaintiff in error as mayor, under the power and authority granted him by the charter and ordinances of the city, have authority, and was he charged with the duty as the chief executive officer of said city with the enforcement of its laws and ordinances, to see that the ordinances against the keeping and sale of intoxicating liquor and against gambling were diligently enforced? Plaintiff in error denies that it was his duty to do so, and contends that the provisions of the charter and ordinances conferred no specific duty nor power upon him in the enforcement of the ordinances of the city.

Section 1 of article 3 of the Tulsa City Charter creates a board of commissioners, composed of the mayor and four commissioners, and provides that all powers conferred on the city when not otherwise provided shall be exercised by said board, and declares:

"The mayor and members of the board of commissioners shall be conservators of the peace with full powers to make arrests in all causes the same as police officers."

Section 6, art. 3, reads in part as follows:

"The mayor shall be a member of the board of commissioners with all the rights, powers and duties pertaining thereto. He shall be the chief executive officer of said city and shall see that all the laws thereof are enforced. * * *"

Section 8 of said article 3 requires the board of commissioners to designate one of their members as police and fire commissioner, who shall have under his special charge enforcement of all police regulations of said city and general supervision over the fire department, and who shall perform such other duties as may be required by the board of commissioners; and section 13 confers upon the board of commissioners control and supervision over all the departments of the city except as otherwise provided in the charter, and confers upon them power to make such rules and regulations as they may see fit and proper concerning the organization, management, and operation of all the departments of the city and the agencies that may be created for the administration of its affairs.

Under the authority granted by the charter, Ordinance 1171 was passed, which provided for the organization of a police force,

and by section 4 of said ordinance it is enacted:

"The chief of police shall be executive head of the police force but he shall be subject to the superior authority of the police and fire commissioner, mayor and board of commissioners. * * *"

By the charter provision quoted, the mayor is designated as the chief executive officer of the city, and the duty is imposed upon him of enforcing all the laws and ordinances of the city. To the end that these laws might be enforced, the police department was created with the chief of police at its head, and it is specifically provided that said chief of police shall be subject to the superior authority of the mayor, thus constituting the mayor one of the controlling heads of the police force. Not only has the duty of enforcing the laws been delegated to and imposed upon the mayor, but the instrumentality through which these laws shall be enforced has been created and placed under his superior authority; in addition to which, there is expressly conferred upon him the powers of any other police officer to make arrests in any case.

The evidence abundantly establishes the fact that open and notorious violations of the ordinances in question have been systematically and continuously carried on, and the plaintiff in error had actual knowledge thereof; that there was a system prevailing in the municipal court whereby fines might be paid periodically or moneys deposited in lieu of bail should be forfeited, and in this way large revenues have been obtained from liquor dealers and gamblers during the entire term of plaintiff in error as mayor of said city, and it is made to appear that this system was so open and notorious as to have become a matter of common knowledge throughout the city.

On this state of facts, we entertain no doubt that the verdict and judgment was right, because plaintiff in error, being charged with the mandatory duty of seeing that said ordinances were enforced and having the superior authority to require said laws to be executed by the police department, cannot evade that responsibility.

It was the clear intent of the freeholders in adopting the charter that the officers upon whom these duties were imposed should be diligent and efficient in the performance thereof; and it is no defense to say that the police department failed to do its duty, when plaintiff in error had actual personal knowledge of the conditions that were notorious and long continued. In fact, it is admitted by plaintiff in error that he did nothing, either to compel enforcement of the laws by the police officers of the city or to cause the removal of his guilty subordinates, nor did he take any step in any way to perform the duties imposed upon him. In State v. Wilcox, 78 Kan. 597, 97 Pac. 372, 19 L. R. A. (N. S.) 224, 130 Am. St. Rep. 385, the mayor of the city of Coffeyville was ousted from office for failure and neglect of official duty in the enforcement of the law relating to the sale of intoxicating liquor and the keeping of gambling houses. In that case, it was made to appear that the mayor had personal knowledge of the violations complained of, and that a system of paying monthly fines of fixed amounts by joint keepers was permitted to be carried on. In State v. Howse, 134 Tenn. 67, 183 S. W. 510, L. R. A. 1916D, 1090, Ann. Cas. 1917C, 1125, judgment removing the mayor of Nashville for allowing saloons and gambling houses to run in violation of law was affirmed.

Here the duty to enforce the ordinances of the city was imposed upon the plaintiff in error by the charter of the city.

In State ex rel. Martin v. Ryan, 92 Neb. 636, 139 N. W. 235, Ann. Cas. 1914A, 224, respondents were members of the board of fire and police commissioners, who together with police officers under their supervision and control had actual knowledge of the frequent violations of the laws of the state by saloon keepers by selling intoxicating liquors on election day, Sundays, and prohibited hours of the night, and made no attempt in good faith to suppress such crime and enforce the law, and respondents were held guilty of a willful refusal to perform their duty, and judgment of ouster was rendered removing them from office. It was urged in that case, as here, that it was not the duty of the board of fire and police commissioners to enforce the laws which had been violated, but that such matters were under the sphere and duty of the mayor and chief of police. The contention was denied, and attention was called to the fact that, under the governing statutes, the chief of police, although he had supervision and control of the police force of the city, was subject to the board of fire and police commissioners. So in the case before us, although the chief of police is executive head of the police force, he is subject to the superior authority of the police and fire commissioners, mayor and board of commissioners, in the order named, and it was within the scope of authority vested in plaintiff in error to require the chief of police and the force under him to enforce the laws of the city with reference to the matters involved, and the inten-

tion of the freeholders was to require an earnest, continued, and persistent effort to enforce the laws and prevent violations thereof, or to punish those guilty of violations, and to require good faith and a reasonable effort upon the part of all officers upon whom such duties were imposed either by themselves or through instrumentalities placed at their disposal

Field v. People, 3 Ill. (2 Scam.) 79, is not controlling, for in that case the Governor had no power to direct and control the actions of the Secretary of State nor to dismiss him for not conforming to executive directions.

In Re Fire and Excise Commission, 19 Colo. 482, 36 Pac. 234, the right of the Governor to remove the police and fire commissioners on assigning in writing therefor a cause not political was upheld, but his power to use the militia to install his appointees was denied, as his responsibility and duty were held to cease upon making the appointment.

The other decisions relied upon are not more in point than the ones reviewed.

The judgment is affirmed.

All the Justices concur, except MILEY, J., disqualified. BRETT and TISINGER, JJ., absent.