STATE OF INDIANA *v.* REICHERT.

[No. 28,334 and 28,335.   Filed June 29, 1948.]

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy Attorney General, *George W. Hadley,* Deputy Attorney General and *Milford M. Miller,* Deputy Prosecuting Attorney of Evansville, for State.

*Lockyear & Lockyear, Benjamin F. Zeig* and *William D. Hardy,* all of Evansville, for appellee.

YOUNG, C. J.—There were two appeals which were consolidated in this court for briefing and argument and now both are treated in this opinion. Each appeal involved a separately returned indictment against the same person and each indictment was attacked upon the same grounds.

The indictment in Cause No. 28,334, was in one count and charged that the defendant was, at the times mentioned in the indictment, the duly elected, qualified and acting mayor of the City of Evansville, and that he was, as such mayor, charged by law with the duty of causing the laws of the State of Indiana to be enforced and was responsible for the good order and efficient government of said city, but that he continuously, during his term of office as mayor, unlawfully, wilfully and corruptly was guilty of oppression, malconduct and misfeasance in the discharge of the duties of his office as mayor, in that he unlawfully, wilfully and corruptly failed and refused to enforce the laws of the State of Indiana with respect to gambling, gaming and pool selling. It is alleged in the indictment that there were 46 separate establishments in Evansville, commonly called "Horse Race Bookie Shops," equipped and organized to take bets and wagers on the results of horse races. The names of the persons operating these 46 establishments and the addresses at which said establishments were operated were set forth specifically in said indictment, and it is alleged that the defendant at all times mentioned in the indictment

knew the names of the persons operating said "Bookie Shops" and the locations thereof, and that same were operated unlawfully and contrary to the criminal laws of the State of Indiana, but that said defendant failed and refused to cause said persons or any of them to be arrested or to cause the criminal laws of the State of Indiana to be enforced against any of said persons.

It is further alleged that the defendant unlawfully, wilfully and corruptly directed and requested certain persons to collect monies from said named "Bookie Shop" operators and to pay same over to him for "political or other purposes," the exact nature of which is alleged to be unknown to the Grand Jury and that said persons did collect large sums of money from said operators and did thereafter unlawfully pay said money over to the defendant in his office as mayor of the City of Evansville and that said defendant accepted said money.

To this indictment appellee filed a motion to quash upon three grounds, viz: (1) The Grand Jury which found said indictment had no legal authority to inquire into the offense charged therein; (2) the facts stated in said indictment do not constitute a public offense; and (3) said indictment does not state the offense charged with sufficient certainty.

In connection with the first ground upon which the motion to quash is based, appellee says that a grand jury can inquire into and present indictments only for felonies and misdemeanors. § 9-807, Burns' 1942 Replacement. They argue that only nonfeasance is charged in the indictments and that mere nonfeasance is not made an offense by the statute under which the indictments were returned and that therefore the grand jury was without authority to inquire into the facts alleged. With this position we

cannot agree. § 9-824, Third and Fifth, Burns' 1942 Replacement, provides that the grand jury may inquire into wilful and corrupt misconduct in office of public officers of every description, and into every charge of extortion preferred against any such officer, and into violations of the criminal laws of the state generally, of which the court has jurisdiction. The grand jury had the right to inquire into violations of the statute involved and to return indictments if it discovered facts which, in good faith, it thought constituted a violation. It may make mistakes, but the fact that a mistake is made does not permit challenge of its power. We think, therefore, that the grand jury in this case was within its legal authority in returning the indictment before us.

The statute under which this indictment was returned is a part of the 1905 Cities and Towns Act, and reads as follows:

> "In case the mayor or other officer of any city or town, shall wilfully or corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office, he shall be liable to be prosecuted by indictment or affidavit in any court of competent jurisdiction, and, on conviction shall be fined not exceeding one thousand dollars ($1,000), and the court in which such conviction shall be had shall enter an order removing him from office." § 48-1304, Burns' 1933.

This case comes before us upon the ruling of the court on the motion to quash the indictment, and the question which we must decide is whether or not the facts alleged in the indictment constitute oppression, malconduct or misfeasance on the part of appellee as mayor of the City of Evansville and, if so, whether the offense is charged with sufficient certainty.

Section 80 of the Cities and Towns Act of 1905 says:

"It is the duty of the mayor of any city:

"First. To cause the ordinances of the city and the laws of the State of Indiana to be executed and enforced.

"Fifth. To perform such duties of an executive or administrative character as may be prescribed by law and to exercise general supervision of subordinate officers and be responsible for the good order and efficient government of the city." § 48-1502, Burns' 1933.

Evansville is a city of second class and it is provided by statute that in such cities with a population of between 80,000 and 100,000 (which includes Evansville) the mayor shall appoint a board of public safety and a chief of police and such board serves at the pleasure of the mayor and the mayor has the power to remove any member of such board and fill any vacancy made by such removal. § 48-1215, Burns' 1933 (Supp.).

The mayor likewise has the right to remove the chief of police appointed by him, § 48-1502, Burns' 1933 and § 48-1222, Burns' 1933 (Supp.); *State ex rel. Harrell* v. *City of Wabash* (1946), 116 Ind. App. 682, 65 N. E. 2d 494, although if such chief, when appointed, came from a lower rank in the police force he can only be demoted and can be removed from the force only after charges are filed and served upon him and a hearing held by the board of public safety. § 48-6105, Burns' 1933 (Supp.).

The board of public safety has immediate control of the police force and its organization. It fixes the number of members of the police force and divides such city into police precincts and promulgates rules and regulations for the appointment of members of the police force and for their government.

It is provided that the police force shall be as nearly as possible equally divided politically and no member thereof shall be dismissed except for cause, after written notice of charges made against him notifying him of the time and place of hearing and after an opportunity for hearing is given. § 48-6102, Burns' 1933 and § 48-6105, Burns' 1933 (Supp.). By statute the chief of police shall have *exclusive* direction and control of the police force, subject to rules and regulations and orders of the board of public safety. § 48-6102, Burns' 1933. The same statute also specifically provides that "in time of peril, danger, riot, extensive conflagration, disorder, or the apprehension thereof, the chief of the fire force and the chief of the police force shall, for the time being, be subordinate to the mayor and obey his orders and directions." This implies that at other times the chief of police is not subordinate to the mayor and need not obey his orders in directing the police force in the exercise of its statutory duties. If it had been the purpose of the legislature to put the mayor in control at all times it could have said so and can still say so.

The officers and members of the police force are made conservators of the peace in such city and possess all the common law and statutory powers of constables. § 48-6107, Burns' 1933. It is made the specific statutory duty of such police force, and the members thereof are especially empowered, to prevent crime, detect and arrest offenders; carefully observe and inspect all places of business under license, or required to have same, all houses of ill fame or prostitution, and houses where common prostitutes resort or reside, all lottery or policyshops, all gambling-houses, cockpits, dance houses and resorts and to suppress and restrain all unlawful or disorderly conduct or practices, and enforce

and prevent the violation of all ordinances in force in such city. § 48-6110, Burns' 1933.

Neither the Cities and Towns Act of 1905, nor any other statute, makes the mayor of a city of the second class, such as Evansville, a conservator of the peace or gives him the authority of a police officer or any other arresting officer.

Members of the police force are, as we have indicated above, the ones upon whom is imposed the primary duty of making arrests, and, except in certain emergencies, they are not subject to his orders and directions and may not be discharged by the mayor or anyone else except after charges have been filed with the board of public safety and notice has been given and a hearing is held.

It is appellant's position that the fact that the right to arrest criminal law violators is lodged in the police force which has been organized by the board of public safety, and the fact that the mayor has no power to arrest does not relieve the mayor of the duty to cause the criminal laws of the state to be enforced in the city. It is argued that the mayor, having the right to "hire and fire" the chief of police and the board of public safety, has the power to see to it that they enforce the law, and that, failing to do so, he has been guilty of misfeasance and malconduct in office in violation of the statute above referred to. In support of this position they cite *Wooden* v. *State* (1918), 68 Okla. 164, 173 P. 829, and *State ex rel. Jackson, Atty. Gen.* v. *Wilcox* (1908), 78 Kas. 597, 97 P. 372. In *Wooden* v. *State, supra,* a statute expressly conferred upon the mayor the powers of a police officer to make arrests in any case, whereas in the case before us the mayor had no such direct power and could bring about law enforcement only by the exertion of his influence upon

those in charge of the police force. In *State ex rel. Jackson* v. *Wilcox, supra,* it was alleged that the mayor had failed and neglected to notify the county attorney of violations of liquor laws and that he had acquiesced in a plan which permitted liquor establishments to operate unmolested upon payment of agreed-upon fines. In the case before us there is no allegation that the mayor participated in any plan or design to permit the "Bookie Shops" to operate or that the defendant failed to notify the prosecuting attorney, the chief of police or other law enforcement officers of the alleged violations or that such law enforcement officers did not have the same knowledge which it is alleged the mayor had.

Another case relied upon by appellant is *People* v. *Flynn* (1941), 375 Ill. 366, 31 N. E. 2d 591. In that case the mayor had power under Illinois law not had by the defendant in the case before us. There is an Illinois statute which makes the mayor a conservator of the peace and gives him power to arrest all persons who are found violating any law or ordinance with or without warrant. Smith-Hurd Ann. Statutes, ch. 24, § 9-93. There he did not need depend upon others. He could act himself. Here he is penalized for failures of members of the police force upon whom the primary duty rested and whom he did not hire and could not "fire" and had no power to order or direct. His only control was indirect through the chief of police.

Another case referred to by appellant is *State ex rel. Martin, Atty. Gen.* v. *Ryan* (1912), 92 Neb. 636, 139 N. W. 235. This was an action in quo warranto against the fire and police commissioners of South Omaha, Nebraska, brought under the provisions of an act to provide for the removal of derelict officers. The matter was referred to a referee who made a finding against

the respondents. It appears from the opinion that the board of police commissioners appointed the chief of police and other officers and policemen. The referee reported that neither the respondents themselves nor the police department made any earnest effort to enforce the law in regard to illegal sales of intoxicating liquor. In the case before us it is not charged in the indictment that the defendant did not make an earnest effort to enforce the law or that he did not use reasonable effort or actively endeavor either by himself or through the police department to secure the enforcement of such laws. It is simply alleged in the indictment that he failed and refused to enforce the criminal laws. Under the Ryan case it would be necessary, in order to create liability against the mayor, for it to appear by allegations in the indictment that he made no effort to enforce the law and did not act in good faith regarding enforcement of the laws alleged to have been violated. The only language of the indictment which might even remotely resemble such allegations are the words that he "failed and refused." In order for this language to bring this case within the Ryan case the word "refused" must be held to connote bad faith and failure to make an earnest effort to enforce the law. It must be borne in mind that this is a criminal prosecution and that in criminal cases all doubts of uncertainty are resolved in favor of the defendant. In order to be good facts must be alleged which charge the violation of the statute with certainty. *McNamara* v. *State* (1932), 203 Ind. 596, 606, 607.

In the Ryan case, *supra*, reference is made to *State* v. *Donahue* (1912), 91 Neb. 311, 135 N. W. 1030, where it was sought to remove the chief of police of Omaha under the same statute and in the opinion of the Ryan case the court quotes with approval from a concurring

opinion in the Donahue case as follows: "Questions of this kind must be solved by a consideration of the facts in each particular case. If the mayor and police board, admittedly the superiors of the chief of police, knowingly and wilfully stand in the way of the enforcement of the law by their subordinate officers, it seems clear that they should not escape and the whole of the penalties of the law be inflicted upon their subordinates." In the case before us there is no allegation in the indictment that the defendant stood in the way of the enforcement of the law by the police department.

There is another well recognized rule of law which is in point in the case before us. That is, that a public officer is not responsible for the acts of commission or omission of persons employed by him in the discharge of his official duties, unless he has directed or authorized the wrong, and in the case before us there is no such allegation. *Robertson* v. *Sichel* (1888), 127 U. S. 507, 32 Law Ed. 203; *Barker* v. *Chicago, F. & St. L. Ry. Co.*, 243 Ill. 492, 90 N. E. 1057; *Lorah* v. *Biscaluz* (1936), 54 P. 2d 1125; *Michel* v. *Smith* (1922), 188 Cal. 199, 205 P. 113, 115, 43 Am. Jur. Public Officers, § 206.

In the case of *Robertson* v. *Sichel, supra,* the Supreme Court said: "A public officer or agent is not responsible for the misfeasance or positive wrongs or for the nonfeasance or negligence or omissions of duty by servants or other persons properly employed by or under him in the discharge of his official duties." This case was an action at law to recover alleged excess duties paid under protest at the New York Custom House. It was a civil action and there would be much greater reason for enforcing the rule in a criminal action than in a civil action.

The case of *Barker* v. *Chicago, etc., Ry. Co., supra,*

is another civil action and the Supreme Court of Illinois said: "The exemption of public officers from responsibility for the negligence or positive wrongs of their subordinates in the discharge of their public duties *arises from considerations of public policy.* Competent persons would not be willing to accept positions which imposed upon them liability for torts and wrongs com-. mitted by subordinates whom they did not appoint and could not discharge. . . ." (Our italics.) This would be much more true where the liability sought to be imposed is criminal. As stated by the court, considerations of public policy would forbid such liability. Our large cities cannot be entirely free of law violations of the types described in these indictments. This, of course, does not excuse failure to try to enforce the laws and reduce the violations to a minimum, but if mayors of such cities were to be held criminally liable for failure to eradicate such offenses few men of the capacity necessary to make a good mayor would subject themselves to such danger. This does not mean, of course, that a mayor may direct noninterference with law violation and be free of penalty. If he directs noninterference, or personally cooperates therein, then he is. liable along with his subordinates. But in the case before us, there is no allegation that the mayor directed his subordinates or personally cooperated in their failure to enforce the law.

The case of *Michel* v. *Smith, supra,* was an action against the chief of police and a police sergeant for unlawful arrest. They were at no time connected with the arrest complained of, but were accused by reason of being superior officers of those who made the arrest. Members of the police force were civil service employees. The chief made appointments only from lists of eligibles. The court said that by reason of his position he was

charged with supervision and control of policemen and then used the following language: "In this capacity he may not be held liable in damages for the unlawful acts and omissions of the subordinates of the department, selected pursuant to the provisions of the charter, unless it can be shown that he has directed such acts or personally cooperated therein."

It seems to us that the indictment in this case fails to state a public offense under the statute upon which the state relies. There is no allegation that the defendant directed or authorized his police department not to enforce the law against gambling and in the absence of such allegation the indictment is not good. The appellee, as mayor, had no right to make arrests himself and he had no right to direct the police force or remove members therefrom. His only influence was through his power to remove his board of safety and chief of police, and there is no allegation in the indictment that he failed to try to use this power.

It also appears to us, for reasons already stated, that the indictment is not sufficiently certain and the motion to quash was properly sustained.

In this indictment there are allegations that money was collected from gamblers and paid to the defendant while he was mayor. As stated by the appellant, in its reply brief, however, the gravamen of the offense charged was that the appellee, as mayor, failed and refused to cause the criminal laws of the state to be executed and enforced in said city. The fact, if it be a fact, that money from law violators was collected and paid to him might be a competent evidence to show his participation in failure to enforce the laws but, as admitted by the Attorney General in oral argument, it adds nothing to this indictment. By this statement we do not decide that the collection of money by a

mayor from persons known to him to be violating the laws against gambling or prostitution would not be malconduct or misfeasance in the discharge of the duties of his office, or that an indictment properly charging such acts as violation of § 48-1304, Burns' 1933, would not be good against a motion to quash.

In Cause No. 28,335 a different indictment in two counts was involved. Both counts were in substantially the same language as the indictment in Cause No. 28,334, except that the first count involved failure to prosecute 18 named persons for keeping houses of ill fame in Evansville, and in the second count the charge is failure to prosecute 14 named persons for operating lottery schemes. In neither of the counts of the second indictment was there any allegation of the collection of money from the persons named in the two counts. For the reasons stated, in connection with the indictment in Cause No. 28,334, we think the motion to quash was properly sustained to both counts in Cause No. 28,335.

The judgment in each case is affirmed.

NOTE.—Reported in 80 N. E. 2d 289.