SALEM BANK AND TRUST COMPANY v. EDGAR D. WHITCOMB, JAMES P. QUINN, THE OHIO CASUALTY COMPANY AND THE MARYLAND CASUALTY COMPANY.

[No. 1-976A155. Filed May 26, 1977. Rehearing denied July 5, 1977. Transfer denied October 6, 1977.]

*Virginia Dill McCarty, Dillon, McCarty, Hardamon & Cohen,* of Indianapolis, *Joe N. Van Valer,* of Greenwood, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, *Hugh E. Reynolds, Jr., David M. Haskett, Locke, Reynolds, Boyd & Weisell,* of Indianapolis, *John T. Rocap, James E. Rocap, Jr., Rocap, Rocap, Reese & Young, of* Indianapolis, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Plaintiff-appellant, Salem Bank and Trust Company (Bank), appeals from the trial court's entry of summary judgment in favor of defendants-appellees, Edgar D. Whitcomb (Whitcomb), James P. Quinn (Quinn), and their respective sureties, The Ohio Casualty Insurance Company and The Maryland Casualty Company.

We reverse and remand.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On December 1, 1966, Whitcomb began his duties as the duly elected Secretary of State of Indiana. Whitcomb appointed Quinn as the Director of the Uniform Commercial Code Division. On July 1, 1964, the Owners Discount Corporation filed a financing statement in the office of the Secretary of State covering all new and used cars held as inventory by Roth & Rummel Auto Sales, Goshen, Indiana, thereby perfecting its security interest.

Bank, contemplating making a loan to Roth & Rummel Auto Sales, on February 18, 1967, requested the office of the Secretary of State to supply it copies of all financing statements

in its office naming Roth & Rommel Auto Sales as debtor.[1] Someone in the office of the Secretary of State, the exact person is in dispute, complied with Bank's request but omitted to include the financing statement naming Owners Discount Corporation as a prior secured party. Bank, believing itself to be the only party with a security interest in Roth & Rummel Auto Sales existing and after acquired inventory, made it a loan authorization in the maximum amount at any one time of $20,000.

On September 8, 1968, William Rummel died thereby terminating the Roth & Rummel partnership. The partnership, as well as the partners thereof, were apparently insolvent. Owners Discount Corporation, pursuant to its prior perfected security interest, took possession of the debtor's inventory and sold it for an amount insufficient to recoup its loan, thereby leaving Bank with no collateral from which to recover its outstanding loan of $18,218.61.

The trial court made findings of fact and conclusions of law the pertinent parts of which provided as follows:

## "Findings of Fact
* * *

6. Whitcomb, Quinn, or one of their employees, or all of them, failed to list the financing statement of Owners Discount Corporation when duly requested by Salem.

7. Plaintiff does not allege bad faith or malice on the part of the defendants Whitcomb and Quinn in failing to

---

1. IC 1971, 26-1-9-407(2) (Burns Code Ed.) provides as follows:
"(2) Upon request of any person, the filing officer shall issue his certificate showing whether there is on file on the date and hour stated therein, any presently effective financing statement naming a particular debtor and any statement of assignment thereof and if there is, giving the date and hour of filing of each such statement and the names and addresses of each secured party therein. The uniform fee for such a certificate shall be one dollar [$1.00] plus fifty cents [50c] for each financing statement and for each statement of assignment reported therein. Upon request the filing officer shall furnish a copy of any filed financing or other statement, security agreement or other supporting paper for a uniform fee of fifty cents [50c] per page. If such request includes certification the filing officer shall charge a uniform fee of one dollar [$1.00] for each certificate. [Acts 1963, ch. 317, § 9-407, p. 539.]"

list the financing statement of Owners Discount Corporation.

8. The answers to interrogatories and affidavits filed herein do not purport to establish or even suggest bad faith or malice on the part of defendants Whitcomb and Quinn.

### Conclusions of Law

1. The law is with the defendants and against the plaintiff.

2. The failure of defendants Whitcomb, Quinn, or their employees to list a Uniform Commercial Code financing statement upon proper request does not give rise to a claim against them without a showing of bad faith or malice.

3. Plaintiff's complaint, when considered with the answers to interrogatories and affidavits filed herein, fails to state a claim upon which relief can be granted in that no bad faith or malice has been alleged or shown.

4. There is no genuine issue as to any material fact.

\* \* \*"

## CENTRAL ISSUES

1. Whether a public officer must act with malice or in bad faith when performing a ministerial duty in order to lose his executive immunity.

2. Whether the trial court erred in not granting summary judgment in favor of Bank.

## DISCUSSION AND DECISION

### I.

Bank contends that the trial court erred in entering judgment as a matter of law in favor of Whitcomb, Quinn, and their sureties because the law does not require a showing of bad faith or malice when a public officer omits to perform a ministerial duty imposed upon him by law. Whitcomb and Quinn contend that the distinction between ministerial and discriminatory duties is not a valid one in Indiana.

It is the opinion of this court that the traditional distinction between ministerial and discretionary acts as they relate to the immunity accorded executive officers is the law in Indiana.

In *Wallace* v. *Feehan* (1933), 206 Ind. 522, 537-538, 190 N.E. 438, at p. 445, our Supreme Court said:

" 'The courts have developed a formula of the greatest importance for determining when a public officer acts within the privilege of his office and when he acts outside the privilege. This formula consists in the distinction between acts involving discretion on the part of the officer and acts purely ministerial in character. The distinction is important with respect to both absolute and conditional privilege, and the rule may be stated as follows: if the officer is engaged in performing a discretionary act, he is not personally liable to an individual in a civil suit for any errors, mistakes of judgment or unwise decisions that he may make in exercising his discretion, but if he is engaged in the performance of a duty purely ministerial in nature, he may be liable to an individual for the misperformance thereof. 'A public officer whose functions are judicial or quasi-judicial,' said the Wisconsin court, 'can not be called upon to respond in damages for the honest exercise of his judgment within his jurisdiction, however erroneous his judgment may be.' On the other hand, when the officer misperforms a ministerial act the fact that it was done in an honest effort to perform his duty and without any malice or evil intent is no defense. When the act is ministerial, the officer acts at his peril, and if he performs it improperly, he is outside the protection of the privilege of public office and must answer as any other individual. Of course, where the privilege of the officer is conditional only, an improper purpose will defeat the defense of privilege even where the function performed is discretionary in character for the reason that the improper purpose makes it impossible for the officer to exercise an intelligent official 'discretion.' Where, however, the privilege is absolute, the purpose or motive of the officer is immaterial.' " (Footnote omitted) (Citation omitted)

Likewise, it was recognized in the case of *Board of Commissionrs of Delaware County* v. *Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852, that there are three requirements which must exist before a public officer will be immune from the consequences of his actions. Therein, at p. 861, it was said:

". . . The three requirements traditionally recognized as necessary in order for personal governmental immunity to apply are: (1) *the agent's action must have been under*

*taken in the performance of a discretionary rather than a ministerial function;* (2) the action must have been within the scope of the agent's employment; and (3) the action must have been undertaken in good faith. . . ." (Our emphasis)

Therefore, it is the opinion of this court that the trial court erred in its findings of fact and conclusions of law that a public officer must always act in bad faith before being liable for his acts of nonfeasance, and thereby entering summary judgment for Whitcomb and Quinn.

## II.

Bank contends that since there is no genuine issue of material fact in dispute, and since the law is clearly in its favor, the trial court erred in not granting summary judgment in its favor.[2] Whitcomb and Quinn contend that even though the trial court may have erred in its belief that the distinction between ministerial and discretionary acts as they relate to the immunity of public officers for their conduct is not valid in Indiana, nevertheless, there being no genuine issue of material fact on a question which is dispositive of this lawsuit, this court should nonetheless affirm the judgment of the trial court. Whitcomb and Quinn contend that it is undisputed that they did not personally answer Bank's request to furnish financing statements; consequently, it would be improper to hold them liable for the acts or omissions of their subordinates.

It is the opinion of this court that the trial court committed no error in not granting summary judgment for Bank; also, we are of the opinion that it would be improper for this court to order the trial court, without further proceedings, to enter judgment for Whitcomb and Quinn.

Whitcomb and Quinn rely upon the case of *State* v. *Reichert* (1948), 226 Ind. 358, 80 N.E.2d 289. In that case the mayor

---

2. Ind. Rules of Procedure, Trial Rule 56(B).

of the City of Evansville was indicted for violating a statute which provided:

" 'In case the mayor or other officer of any city or town shall wilfully or corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office, he shall be liable to be prosecuted by indictment or affidavit in any court of competent jurisdiction, and, on conviction, shall be fined not exceeding one thousand dollars ($1,000), and the court in which such conviction shall be had shall enter an order removing him from office.' § 48-1304 Burns' 1933."

The indictment was dismissed for failure to state a public offense. However, at 80 N.E.2d at p. 293, the court stated:

"There is another well recognized rule of law which is in point in the case before us, That is that a public officer is not responsible for the acts of commission or omission of persons employed by him in the discharge of his official duties, unless he has directed or authorized the wrong, and in the case before us there is no such allegation. . . ." (Citations omitted)

This is a correct statement of the law as it relates to the criminal liability of a public officer for the acts of his subordinates. However, as far as the civil liability of a public officer for the acts of his subordinates is concerned, we are of the opinion that *Reichert, supra,* is an incomplete statement of the law.

The law as it relates to the civil liability of a public officer for the acts or omissions of his subordinates is found at 63 Am. Jur.2d *Public Officers and Employees* § 295 (1972), wherein it is stated:

"It is settled, subject, however, to a number of exceptions, *that in the absence of a statute imposing liability, or of negligence on his part in appointing or supervising his assistants,* an officer is not liable for the default or misfeasance of subordinates and assistants, whether appointed by him or not, *provided that the subordinates or assistants, by virtue of the law and of the appointment, become in a sense officers themselves, or servants of the public, as distinguished from servants of the officer, and provided that*

*the officer does not direct the act complained of, or personally co-operate in the negligence from which the injury results.* An administrative officer is, however, liable for the misconduct or negligence in the scope of the employment of those employed by or under him voluntarily or privately, and paid by or responsible to him. And public officers having the custody of public funds or property are generally held liable for losses due to the negligence or misconduct of their subordinates. Liability may also be expressly provided for by statute. And where an officer fails in a duty to take action, liability may be predicated on nonaction after knowledge of the negligence of subordinates has come to his attention.

The exemption of public officers from responsibility for the acts and defaults of those employed by or under them in the discharge of their public duties is allowed in a great measure from considerations of public policy.

The liability of a public officer for the acts, defaults, or misfeasances of his deputies is spoken of in another section of this article." (Footnotes omitted) (Our emphasis)

Likewise, a public officer is generally liable for the actions of his deputies, as distinguished from an assistant or other subordinate employee, which he appoints. See, *Magenheimer* v. *State ex rel. Dalton* 120 Ind. App. 128, 90 N.E.2d 813; Annot., 71 A.L.R.2d 1140 (1960).

As can be seen from the above statement of the law many of the exceptions to the general rule of public officer non-liability for the acts or omissions of their subordinates raise factual questions which were not addressed to—or by—the trial court.

The trial court, having entered summary judgment for Whitcomb and Quinn based upon its erroneous interpretation of Indiana law, and there being potential factual contraversies which were not developed in the trial court, we order this case reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 362 N.E.2d 1180.