376 N.E.2d 1205 (1978)
Andrew FOSTER, Appellant (Plaintiff below),
v.
Noble R. PEARCY, Appellee (Defendant below).
No. 1-577A113.
Court of Appeals of Indiana, First District.
June 20, 1978.
Rehearing Denied July 24, 1978.
Forrest Bowman, Jr., Indianapolis, for appellant.
John T. Davis, Indianapolis, for appellee.
ROBERTSON, Justice.
Plaintiff-appellant Andrew Foster instituted a civil action for defamation against defendant-appellant Noble Pearcy and Leroy New. In response, Pearcy filed a motion to dismiss under Indiana Rules of Procedure, Trial Rule 12(B)(6) for failure to state *1206 a claim for relief. This motion was ultimately granted by the trial court and judgment was entered thereon. Foster now appeals from a denial of his motion to correct errors.
The alleged defamation relevant to this appeal resulted from statements made by New in September, 1974. At that time, Pearcy was the prosecuting attorney in Marion County and New was a deputy prosecutor under him. During 1974, New participated in the presentation of evidence to the Marion County Grand Jury concerning an alleged narcotics smuggling operation. As a result of the evidence presented by New and the prosecutor's office, Foster and others were indicted on September 6, 1974, for various narcotics offenses. In 1975, another Marion County Grand Jury dismissed all charges against Foster due to a lack of evidence.
The first of the alleged defamatory statements made by New occurred on September 7, 1974. It appears that on that date, New contacted a reporter for the Indianapolis Star to advise him of the indictment against Foster. In his complaint, Foster alleges that New made false and defamatory remarks to that reporter, including statements that (1) Foster grossed $18,000.00 per week from his heroin business; (2) Foster was part of a nation wide heroin operation; and (3) the indictment was the result of a two-month joint investigation by city and federal authorities. Foster further stated in count two of his amended complaint that New, on September 11, 1974, made additional statements to the press that police authorities "knew the whereabouts of huge profits plaintiff [Foster] was estimated to have made during a two (2) year stint as boss of a narcotics operation."
The only issue raised by Foster on appeal is whether the trial court erred by granting Pearcy's motion to dismiss and entering judgment thereon. Foster argues that his complaint properly states a claim for relief against Pearcy under two theories: respondeat-superior and negligence in hiring and supervising New.
The trial court held that the complaint was inadequate to state a claim under respondeat-superior and that Pearcy was shielded by governmental immunity for his discretionary acts of hiring and supervising New. Further, Pearcy argues in his brief that New's statements were made in connection with a judicial proceeding and were therefore absolutely privileged.
The law of defamation recognizes two types of privilege, absolute and qualified. The distinction between these two types of privilege is quite important. When defamatory words are spoken under circumstances giving rise to an absolute privilege, no right of action accrues to the person defamed, no matter what the intent of the speaker or whether the words were published maliciously, and the defamation action comes to an end. Conversely, where the speaker can claim only a qualified privilege, further inquiry can be made after the establishment of the privilege to determine whether the speaker has abused his privilege:
Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury. Prosser, Law of Torts, § 115, at p. 796. (Fourth Edition, 1971).
Statements made in the course of judicial proceedings have been long accorded an absolute privilege or immunity from suits for defamation under common law. This rule has been followed in numerous Indiana cases. Wilkins v. Hyde (1895), 142 Ind. 260, 41 N.E. 536; (pleadings), Hutchinson v. Lewis (1881), 75 Ind. 55; (witness), Meier v. Combs (1973), 156 Ind. App. 458, 297 N.E.2d 436; (pleadings), Baldwin v. Hutchinson (1893), 8 Ind. App. 454, 35 N.E. 711 (witness).
In the case of Griffith v. Slinkard (1896), 146 Ind. 117, 44 N.E. 1001, our Supreme *1207 Court extended the protection of judicial immunity to actions for libel and malicious prosecution filed against a prosecuting attorney. In that case, a prosecuting attorney presented evidence to a grand jury in order to obtain indictments against Griffith and another. When the grand jury voted to indict only the second person, and not Griffith, the prosecutor secretly altered the indictment to include Griffith's name. He then had a warrant issued for the arrest of Griffith, who was subsequently arrested by the police. The charges against Griffith were later dismissed, however, and he then sued the prosecutor for libel and malicious prosecution.
After determining that a prosecutor was a judicial officer, the Supreme Court held that he was immune from an action for malicious prosecution:
The prosecuting attorney therefore is a judicial officer, but not in the sense of a judge of a court. The rule applicable to such an officer is thus stated by an eminent author: "Whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him and the manner in which said duties are performed. If corrupt, he may be impeached or indicted, but he cannot be prosecuted by an individual to obtain redress for the wrong which may have been done. No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it". Townsend Slander and Libel (3rd Ed.), § 227, pp. 395-6. 146 Ind. at 121, 122.
The court further held that the prosecutor's reading of the false indictment in open court was absolutely privileged and could not be the basis of an action for defamation:
And it makes no difference whether the charge be true or false; or whether it be sufficient to effect its object or not; if it be made in the due course of a legal or judicial proceeding, it is privileged, and cannot be the foundation of an action for defamation. 146 Ind. at 123, 44 N.E. at 1002.
The United States Supreme Court cited and discussed Griffith in the recent case of Imbler v. Pachtman (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. In Pachtman, an action was filed against a state prosecutor under 42 U.S.C. § 1983, alleging that the prosecutor had conspired to unlawfully charge and convict Imbler of murder. The Supreme Court first noted that the common law immunity had previously been allowed to legislators and judges in actions under § 1983, Tenney v. Brandhove (1951), 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Pierson v. Ray (1967), 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, and also to federal prosecutors in actions for malicious prosecution. Yaselli v. Goff (2nd Cir.1926), 12 F.2d 396, affd. per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395. The Supreme Court further stated that the holding in Griffith had become "the clear majority rule" on the issue of a prosecutor's immunity.
The Supreme Court then stated that the similarity in the duties and function of a prosecutor with that of a judge justified the extension to that office of the judicial immunity deeply rooted in our common law:
Courts that have extended the same immunity to the prosecutor have sometimes remarked on the fact that all three officials  judge, grand juror, and prosecutor  exercise a discretionary judgment on the basis of evidence granted to them. Smith v. Parman, [101 Kan. 115, 165 P. 663 (1917)]; Watts v. Gerking, supra [111 Or. 641, 222 P. 318 (1924)]. It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as "quasi-judicial" officers, and their immunities being termed "quasi-judicial" as well. 96 S.Ct. 991, note 20.
Further, the immunity given to prosecutors is based on similar public policy considerations  the concern about harassment from unfounded litigation that could deflect *1208 the prosecutor's time and energy from his public duties and that the threat of such litigation could prevent him from exercising the independent judgment which is necessary to carry out his official duties. The Supreme Court concluded that an absolute privilege, rather than a qualified privilege, from actions under 42 U.S.C. § 1973 was necessary. However, the court expressly refused to consider whether the immunity should be extended to a state prosecutor while acting as an investigative or administrative officer rather than as an advocate.
It seems clear, then, that the real issue here is whether the acts and words of New fall within the scope of the traditional judicial privilege so as to exempt New and Pearcy from liability.
A statement is made in Prosser, Law of Torts, (4th Ed. 1971), that statements made in a press conference are not covered by judicial immunity:
It is clear, however, that statements given to the newspapers concerning the case are no part of a judicial proceeding, and are not absolutely privileged. Prosser, Law of Torts, § 114, p. 781.
The authority cited for that quote is the case of Kennedy v. Cannon (1962), 229 Md. 92, 182 A.2d 54. In Kennedy, an attorney was defending his client against a charge of rape. In the course of his defense, the attorney made statements to the press indicating that the victim had in fact consented to the rape. The attorney was sued by the victim for defamation, and the court on appeal held that the attorney could claim no privilege:
The term "judicial proceeding" is broad enough to cover all steps in a criminal action ... However, this does not necessarily mean that every statement made by an attorney after the inception of a judicial proceeding will be privileged. 182 A.2d at 57.
It seems that the Restatement (Second) of Torts would take a view similar to that expressed by Prosser, and hold that a statement made in a press conference by a prosecuting attorney would bear only a qualified privilege, not an absolute privilege. Section 585 of the Restatement sets out the basic doctrine of judicial immunity as applied to a person acting in the capacity of judge. This absolute privilege is then carried over to attorneys, including prosecuting attorneys, in section 586:
An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.
The extent of this attorney's privilege is expanded only slightly in section 586, as seen in the following portion of Comment a:
The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding. The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion. The conduct of the litigation includes the examination and cross examination of witnesses, comments upon the arguments both oral and written upon the evidence, whether made to court or jury.
Analysis of other sections of the Restatement, however, seem to suggest that a prosecutor in the present situation could not claim an absolute judicial privilege, but rather must claim a qualified immunity. In § 591, the absolute privilege for federal officials and some state officials is set out:
An absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exists for
(a) any executive or administrative officer of the United States; or
(b) a governor or other superior executive officer of a state.
This section embodies the doctrine, for federal officials, set out in Barr v. Matteo *1209 (1959), 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434. However, while recognizing that some states have extended this absolute privilege to all state officials, the Restatement suggests that the general rule would hold that only cabinet level state officials may claim absolute immunity, while inferior officers would be limited to a qualified immunity. Illustrations 3 and 4 to section 591 would apply this to prosecuting attorneys:
3. A, the attorney general of State X, issues a press release explaining the delay of his office in prosecuting certain offenses against the State, in the course of which he accuses B of suppressing evidence that might lead to a conviction. A is absolutely privileged, and is not liable to B.
4. The same facts as in Illustration 3, except that A is not Attorney General, but is a local district attorney. A has only a conditional privilege, as stated in § 598A, even if it is found that the press release is within the scope of his official duties.
The qualified privilege under § 598A to which reference is made above reads as follows:
An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties.
The policy considerations of granting an absolute privilege to the acts of a judicial or quasi-judicial officer are well stated in the case of Schulze v. Coykendall (1976), 218 Kan. 653, 545 P.2d 392:
Absolute privilege is recognized in cases where the public service or the administration of justice requires complete immunity as in legislative, executive or judicial proceedings, the occasion for the immunity being not so much for those engaged as for the promotion of the public welfare. 545 P.2d at 398.
In the present case, a rather difficult policy question is presented. It cannot be disputed that the public has a vital interest in being well informed of the criminal investigations and charges emanating from the prosecutor's office. It seems equally certain that the prosecutor, or his staff of deputies, has an affirmative duty to inform the public of the actions taken by that office. Naturally, one of the more efficient methods of performing that duty is the use of press releases to the news media. Equally compelling, however, is the right of each citizen to be secure in his reputation and to be free from malicious and unwarranted attacks on his character.
The absolute immunity accorded judicial officers has traditionally been linked with those actions and words which are an intrinsic part of the judicial process, such as conduct during trials, pre-trial hearings and conferences, pleadings, etc., and in the case of a prosecutor, the decision whether or not to institute criminal proceedings. This protected conduct generally occurs within the framework of the traditional adversary proceeding where public policy demands that each litigant be free to fully and freely express his views without any fear or threat of retribution by another disgruntled participant. In such a situation, where the rights or liberties of a citizen are directly at stake, the possibility that some bit of relevant evidence or cogent argument might be suppressed through fear of a retaliatory civil action justifies the loss of civil remedy which is occasioned by the doctrine of absolute judicial immunity. We do not feel, however, that the administrative duty of a prosecutor to inform the public falls within the ambit of this type of judicial function for purposes of the application of the traditional absolute immunity. We further believe that no substantial threat to the right to free and full disclosure of government business to the public will be posed by a refusal to expand the traditional qualified privilege covering such statements to an absolute immunity. We hold, therefore, that the statements made by New in 1974 which are alleged to be the basis of liability for New and Pearcy are covered by a qualified privilege in this action for libel and *1210 slander and not by an absolute judicial privilege as was held by the trial court.
It should be noted that our holding in this case does not mean that an actionable defamation may be found by merely proving that the statements were in fact false or inaccurate, even if made negligently. Foster still carries the burden of overcoming the qualified privilege by showing that the statements were spoken maliciously and that New abused the privilege. See Knight v. Baker (1977), Ind. App., 363 N.E.2d 1048; Patten v. Smith (1977), Ind. App., 360 N.E.2d 233.
Having found that New may claim a qualified privilege rather than an absolute immunity, we must now determine whether the trial court correctly decided that Foster's complaint failed to state a claim for relief under the general doctrine of respondeat-superior  that Pearcy is liable for the acts of his agent New.
The standard to be used in ruling on a TR 12(B)(6) motion was stated by the Supreme Court in State v. Rankin (1973), 260 Ind. 228, 294 N.E.2d 604:
This Court has noted that in a typical 12(B)(6) situation, a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. (Citations omitted). The rules do not require that the complaint state all the elements of a cause of action. (Emphasis in original). 294 N.E.2d at 606.
Although we have not been blessed by any citation of authority on this question by the briefs filed in this appeal, it can be stated as the general rule that a government officer is not liable for the acts of other government employees that work for or under him. Salem Bank & Trust Co. v. Whitcomb (1977), Ind. App., 362 N.E.2d 1180. However, an exception to this general rule holds that an officer may be vicariously liable for the acts of his deputies, as distinguished from other subordinate employees or assistants. IC 1971, 5-6-1-1, IC 1971, 5-6-1-3; Salem Bank & Trust Company v. Whitcomb, supra.
Foster's complaint alleges that New, a deputy prosecutor under Pearcy, made statements which were defamatory to Foster in the course of his employment and as a representative of Pearcy. Since we have decided that New may claim a qualified rather than an absolute privilege, it is certainly possible that Foster could prove a set of facts to support his claim for relief against New and Pearcy. Therefore, it was error to dismiss the complaint for failure to state a claim for relief under a theory of respondeat-superior.
Foster lastly argues that Pearcy could be liable in negligence for failing to properly supervise New. Again, however, Foster has failed to cite any authority or present any reasoning to support his argument, other than quoting the standard to be used in ruling on a TR 12(B)(6) motion.
It has long been the common law rule in this state that a government employee or official who is performing a discretionary function enjoys a qualified privilege and will not be held liable for mistakes or errors in judgment while exercising that discretion. Wallace v. Feehan (1934), 206 Ind. 522, 190 N.E. 438; Board of Commissioners of Delaware County v. Briggs (1975), Ind. App., 337 N.E.2d 852; Adams v. Schneider (1919), 71 Ind. App. 249, 124 N.E. 718. This qualified privilege for discretionary acts was recently codified by the enactment of the Indiana Tort Claims Act, IC 1971, 34-4-16.5-3(6) (effective February 19, 1974).
Foster's complaint does not allege any willful or malicious conduct by Pearcy nor does it allege any unauthorized acts by Pearcy. It merely alleges that Pearcy was negligent in failing to properly supervise New in the performance of his duties. The supervision of deputies and employees constitutes a discretionary function and is therefore covered by the qualified privilege. Because Foster made no allegation that Pearcy in any way abused this privilege, the trial court properly held that the complaint failed to state a claim for relief against Pearcy for negligence.
*1211 This cause is reversed and remanded with instructions to reinstate Foster's complaint as to his claim for relief under a theory of respondeat-superior.
Reversed and remanded.
LYBROOK, P.J., and LOWDERMILK, J., concur.