Louis W. CARLSON, individually and as Mayor of the City of Newcastle, Wyoming; and Norm Steveson, individually and as Councilman of the City of Newcastle, Wyoming, Appellants (Plaintiffs),

v.

Richard BRATTON, Wayne Burr, Albert Zanoni, Douglas Holwell, and Helen Weyrich, as members of the City Council of the City of Newcastle, Wyoming; and Howard Snider, Appellees (Defendants).

No. 83–153.

Supreme Court of Wyoming.

June 4, 1984.

Rehearing Denied June 21, 1984.

Carl L. Lathrop, Lathrop & Uchner, Cheyenne, for appellants.

Richard S. Dumbrill, Jones, Dumbrill & Hansen, Newcastle, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

After appellant Carlson, Mayor of Newcastle, discharged appellee Snider from the position of Chief of Police, the majority of the City Council (those appellees named as Council members) directed the Mayor to specify reasons for the discharge and to reinstate appellee Snider as Chief of Police pending the hearing; they also appointed a hearing officer to conduct a hearing to determine whether or not there was cause for the discharge. Appellant Carlson refused to specify charges or reinstate appellee Snider. However, the Council continued to pay his salary.

Appellants sought a judgment declaring valid the discharge of appellee Snider by appellant Carlson. The district court refused such declaratory judgment and held "that such action of termination by the Mayor be held for naught and is void ab initio," and that by virtue of § 19–7 of the Code of Newcastle,[1] the chief of police could be removed only with the consent of the council.

We reverse.

Although the parties argue, pro and con, four or five bases for upholding or reversing the district court, the issues condense into two:

1. Did the Mayor have authority under the law to discharge appellee Snider from the position of Chief of Police without Council approval and without a hearing?

2. Is the appeal moot because of failure by appellants to consolidate the case with an administrative proceeding held to reinstate appellee Snider?

AUTHORITY TO DISCHARGE

Law and ordinances concerning the authority to discharge city employees are premised on the necessity for efficient operation of a city by its executive officer, in this instance, the mayor. The chief of police is in a position of making and carrying out policy for the mayor. The legislature recognized this fact in enacting the Civil Service Act for city fire and police departments. Sections 15–5–101 et seq., W.S. 1977.[2]

The Civil Service Act allows for the establishment of a police department civil service commission which in turn classifies the various positions in the police department, and provides for the examination of applicants for employment.

Section 15–5–105, W.S.1977, provides for the employment and appointments of chiefs of the fire department and the police department. Section 15–5–105(c) provides:

"This section does not apply to the appointment, tenure or office of the chief of police. However, if any member of the police department is appointed chief of police, he shall remain on the list of eligible persons certified and his classification remains the same at the end of his term as chief of police."

The position of chief of police is clearly recognized as different than that of any other position in the police department for the obvious reason that the chief of police is in a position of making and carrying out policy for the mayor. The mayor is entitled to have someone in that position who concurs in the mayor's policies, and with whom the mayor can work towards the goal of implementing those policies.

To require the mayor to employ a police chief with differing philosophies could frustrate the mayor's entire program. The voters of a city elect a mayor who they believe'

1. Section 19–7 of the Code of Newcastle provides in part:
"There is hereby established the office of chief of police, who shall be appointed by the mayor, by and with the consent of the city council."

2. The provisions of that Act are not applicable to this matter inasmuch as the City of Newcastle has not adopted it. It is referred to here only as an example in point.

will act in their best interests. Many political issues become involved necessarily, and to force the winner of a political election to be saddled with a member of his immediate executive staff with whom he cannot work, is to block the efficiency of that political system. The governing body itself is of course a check on the powers of the mayor's office; but the legislature recognized the necessity for the mayor to retain control over his or her policy making employees.

The pertinent statutes must be interpreted with reference to that background. The following is set forth under General Provisions relating to Cities and Towns:

The term "mayor" is defined by § 15–1–101(a)(viii), W.S.1977:

" 'Mayor' means the person elected, either by popular vote or by vote of the governing body, to exercise the powers of the office and to be presiding officer of the governing body."

"Governing body" is defined by § 15–1–101(a)(vi), W.S.1977:

" 'Governing body' means the council or commission constituting the elected legislative body of any city or town."

Section 15–1–103(a)(xxxvii), W.S.1977, provides as follows:

"(a) The governing bodies of all cities and towns may:

\*    \*    \*    \*    \*    \*

"(xxxvii) Appoint, in addition to the appointed officers and employees provided by law, other personnel as are necessary for the efficient operation of the city or town and:

\*    \*    \*    \*    \*    \*

"(D) If any person is removed from office for incompetency, neglect of duty or otherwise for cause, specify the charges and provide the person removed an opportunity for a hearing on the charges;

"(E) Make the cause of removal a matter of record."

Under provisions relative to cities of the first class, § 15–3–204, W.S.1977, provides:

"The clerk, treasurer, engineer, attorney, fire chief, police chief, policemen and police justices shall be appointed and may be removed by the mayor according to conditions fixed by the governing body. All other appointments and removals shall be in a manner determined by the governing body pursuant to the general powers granted cities and towns. The mayor has the power to remove any officer appointed under W.S. 15–1–101 through 15–10–137 for incompetency or neglect of duty."

■ Appellees contend that the limiting phrase in § 15–3–204, "according to conditions fixed by the governing body," qualifies the power of the mayor to remove the police chief. As already noted, the meaning of the phrase cannot be taken to hamstring the mayor in controlling his executive duties.

The phrase must be read to refer to the authority of the governing body to set conditions affecting the reasonable terms of employment of the persons listed in that section, such as hours of work, rates of pay, insurance coverage and the like. The legislature did not intend to allow the governing body to abrogate the power given in the section itself for the mayor to remove the chief of police. If the clause were read as contended by appellees, the conditions fixed by the governing body could be so stringent that only it would have the power to appoint and remove these key officers. If the legislature had so intended, it would have given the power directly to the governing body and not the mayor.

■ The quoted provisions of § 15–1–103(a)(xxxvii), supra, authorize the governing body to appoint "other personnel" and set forth requirements for their dismissal. By implication, such requirements and the appointing power are applicable only to those other than "appointed officers and employees provided by law."

■ Unless modified by a statute or otherwise, the power of appointment to an

office such as police chief carries with it, as an incident, the power of removal. 4 McQuillin, Municipal Corporations, § 12.-229(b), p. 228 (1979); 67 C.J.S. Officers § 118(b), p. 481 (1978). The fact that the appointment of a chief of police is subject to the approval of the city council does not make that confirming body the appointing authority. *LaPeters v. City of Cedar Rapids, Iowa,* 263 N.W.2d 734 (1978); 63 Am.Jur.2d Public Officers and Employers § 110, p. 697 (1972). A number of other jurisdictions have recognized that in the absence of a statutory or contractual prohibition the mayor or other executive officer having the power to appoint a chief of police can remove that official without notice, hearing or reasons. *Newby v. City of Andalusia,* Ala., 376 So.2d 1374 (1979); *Gray v. City of Manitou Springs,* 43 Colo. App. 60, 598 P.2d 527 (1979); *LaPeters v. City of Cedar Rapids,* supra; *Zeloyle v. Bettor,* 371 Pa. 546, 91 A.2d 901 (1952); *Hackler v. Ward,* 105 Cal.App.2d 615, 234 P.2d 170 (1951); *State v. Reichert,* 226 Ind. 358, 80 N.E.2d 289 (1948); and *Gray v. State,* 24 Ohio App. 445, 157 N.E. 905 (1927).

■ In this case the mayor of the City of Newcastle is possessed of the power to appoint the chief of police subject to confirmation by members of the city council. It is a necessary corollary of that power that the mayor also is vested with the power of removal of the chief of police from that office. The rule of common law was that the appointment to municipal office carried with it no vested property interest in continued employment, and such officers were subject to removal without cause, reason or hearing unless otherwise prescribed. 4 McQuillin, supra, § 12.249, p. 322. See also *State ex rel. Pearson v. Hansen,* Wyo., 401 P.2d 954, 956 (1965). The net result of these authorities is that there is no property right in the office of chief of police.

Appellees argue that notwithstanding the fact that the mayor had the authority to discharge the chief of police, such discharge would have to be pursuant to the Administrative Procedure Act. They point to the language in the trial court's opinion letter on this matter in support of their argument. The trial court stated:

"16–3–101(b)i excepts the *governing body* of city or town from the Administrative Procedures Act. 15–1–101(a)(vi) defines 'governing body' as the council constituting the elected legislative body of the City. It would therefore seem that since the action of removal of the Chief was not by the governing body but by the Mayor of the City the Administrative Procedures Act would apply. I'm not sure what effect this has, but it certainly appears that had the Mayor the power to remove the Chief of Police, he would have to comply with the provisions of the Administrative Procedures Act and probably conduct a hearing."

Section 16–3–107, W.S.1977,[3] sets out the procedure to be followed in a contested case. It provides in part:

"(a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail. * * * "

The section goes on to give details of the notice requirement, discovery and various other things.

Section 16–3–101(b)(ii) provides the following definition:

" 'Contested case' means a proceeding including but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing."

Section 16–3–101(b)(i) defines agency as follows:

" 'Agency' means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivi-

---

**3.** Sections 16–3–101 thru 16–3–115, W.S.1977, comprise the Wyoming Administrative Procedure Act.

sion of the state, except the governing body of a city or town, the state legislature and the judiciary."

■ Although a proceeding by the mayor which falls into the category of a contested case may be subject to the provisions of the Administrative Procedure Act, this matter is not encompassed within the definition of a "contested case." A contested case is one where, under the law, legal rights are to be determined after opportunity for hearing.

"This court has previously had opportunity to construe the meaning of a 'contested case.' *Scarlett v. Town Council, Town of Jackson, Teton County,* Wyo., 463 P.2d 26, 29 (1969); *Thornley v. Wyoming Highway Dept., Motor Vehicle Division,* Wyo., 478 P.2d 600, 603 (1971); *Lund v. Schrader,* Wyo., 492 P.2d 202, 209–210 (1971); and *Firemen's Pension Fund v. Hoy,* Wyo., 516 P.2d 365, 366–367 (1973). Each of these cases dealt with the question of whether or not there was a 'contested case,' requiring notice and hearing at the agency level. To be a 'contested case' there must exist legal rights which, under the law, are to be determined after an opportunity for a trial-type hearing. *Scarlett v. Town Council,* supra." *Diefenderfer v. Budd,* Wyo., 563 P.2d 1355, 1359 (1977).

■ The Administrative Procedure Act does not *require* an opportunity for a hearing in a contested case, it only *defines* a contested case as one where a hearing is otherwise required by law, and then sets out the procedure for such hearing.

"Our administrative procedure act and our rules of civil procedure both contemplate administrative proceedings where there is a hearing and administrative proceedings where there is no hearing. If the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, the proceeding is called a 'contested case.' If such hearing is not required, the proceeding is a non-contested case. See § 9–276.19(b)(2), W.S.1957, 1969 Cum.Supp.; and Rule 72.1(b), W.R.

C.P." *Thornley v. Wyoming Highway Department, Motor Vehicle Division,* Wyo., 478 P.2d 600, 603 (1971).

In the case presently under consideration, no hearing was required, either by statute, or by city ordinance. Section 15–1–103 requires a hearing when a person is removed from office for incompetency, neglect of duty, or otherwise for cause. That was not the case here. The Rules and Regulations of Practice and Procedure, adopted by the City of Newcastle, Chapter II, Decisions, Section 1, provides in part as follows:

"Whenever the City of Newcastle makes any decision which entitles the person affected by the decision to a hearing under the Administrative Procedures Act, the City shall, acting through its Mayor, * * * give notice * * *."

This anticipates a decision in a "contested case" as defined by the Administrative Procedure Act, and requires a notice in such instance. Beyond that, appellees themselves admit that the decision taken here was not by "the City of Newcastle," inasmuch as it was not taken by the governing body. Therefore, said "Rule" would not be applicable to the action taken by the Mayor. Appellees cite us to no other city ordinance or rule of practice and procedure applicable to a hearing requirement.

■ Appellees refer us to *Keslar v. Police Civil Service Commission, City of Rock Springs,* Wyo., 665 P.2d 937 (1983), for the argument that the chief of police was entitled to a hearing. We would distinguish that case on two dispositive grounds. First, the City of Rock Springs in that case had adopted the Police Department Civil Service Commission, which provided for a hearing; that is not the case here. Second, that case involved a police officer, not the chief of police. We believe there to be a qualitative difference between the two positions, for reasons relative to the policy making role of the chief of police given above. We need not say more about that case. There is no right or privilege for one to be a chief of police or to continue to be a chief of police. As already noted,

the policy making officials of a city are appointed and removed from office at the pleasure of the mayor. When a new mayor is elected, these officials are often changed—and it should be the prerogative of the new mayor to do so.

Absent a discrimination amounting to a violation of civil rights, a person does not have tenure in employment unless such tenure is established by statute or by contract or by rules and regulations pursuant to statute or by rules and regulations having the force of a contract. One of the bargaining items in labor contracts concerns the causes for termination and the method of establishing the same. Adoption of the Little Norris-LaGuardia Act, § 27-7-101 et seq., W.S.1977, was for the purpose of insuring the right of labor to organize and bargain for such items. Personnel rules of the several governmental units serve the purpose of contractual labor requirements. In all such, there is a recognition of a definite cleavage between management and labor. The positions listed in § 15-3-204, supra, are positions of management and the appointees thereto serve at the pleasure of the mayor.

Appellant Carlson had the authority under the law to discharge appellee Snider from the position of Chief of Police without Council approval and without a hearing.

MOOT?

Appellees contend that because the declaratory judgment appealed from herein did not specifically reinstate Chief Snider, but only recommends that the Mayor do so, another petition for review in the district court was filed, and it was from this petition that the appeal should have been taken.

The declaratory judgment states, " * * * such action of termination by the Mayor be held for naught and is void ab initio." "Ab initio" is defined as, "From the beginning; from the first act; from the inception. * * " Black's Law Dictionary, (5th Ed.1979), p. 6. The declaratory judgment was not a recommendation that the Chief of Police be reinstated, it was a declaration that the dismissal was never effective, as it was void from the minute it was given. It was proper for appellants to appeal from the order.

Reversed.

BROWN, J., dissenting.