Kenneth SIEBKEN, Appellant
(Plaintiff),

v.

TOWN OF WHEATLAND, Wyoming;
Charles Parsons, individually and in
his official capacity as Mayor; Jim
Dunham, individually and in his offi-
cial capacity as Town Clerk; Bill Lind-
strom, Harry Stevens, Jack Eddleman
and Frank Tucker, individually and in
their official capacities as members of
the Wheatland Town Council, Appellees
(Defendants).

No. 84-152.

Supreme Court of Wyoming.

June 7, 1985.

Rehearing Denied July 22, 1985.

Robert T. Moxley, Wheatland, for appel-
lant.

Lawrence G. Orr, Guy, Williams, White
& Argeris, Cheyenne, for appellees.

Before THOMAS, C.J., and ROSE, ROO-
NEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant appeals from a summary judgment entered against him in his action against appellees for damages resulting from his discharge by appellees from employment as a garbage man for appellee Town of Wheatland.

We affirm.

Appellee Town of Wheatland received a complaint from one of its residents that while collecting garbage at his residence, the appellant and his fellow garbage man had scavenged or rummaged through the garbage. The Town of Wheatland had told all of its garbage men, including appellant, that scavenging or rummaging through garbage was not allowed. Appellant and his fellow garbage man were discharged immediately.

## TENURE

■■■ Our recent opinions in *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984), and *Allen v. Safeway Stores Incorporated*, Wyo., 699 P.2d 277 (1985), are dispositive of most of the issues presented in this appeal. An employee may resign from employment under an at-will contract at any time without cause, and an employer may discharge an employee under an at-will contract at any time without cause. Also see *Lukens v. Goit*, Wyo., 430 P.2d 607 (1967); *Long v. Forbes*, 58 Wyo. 533, 136 P.2d 242, 158 A.L.R. 224 (1943); *Casper Nat. Bank v. Curry*, 51 Wyo. 284, 65 P.2d 1116, 110 A.L.R. 360

(1937). Appellant does not contend that he was employed under a contract for a definite term. He argues that he was a "permanent" employee in that he was paid by the month rather than hourly, in that he was allowed paid vacations, and in that he was included in a pension program. The failure of such conditions to establish a definite term of employment was recognized in *Allen v. Safeway Stores Incorporated*, supra. Without more, appellant's discharge as an at-will employee was proper.

The fact that appellant did not have tenure distinguishes this case from *Cleveland Board of Education v. Loudermill*, — U.S. —, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), which holds that a pretermination notice and opportunity to respond[1] are required when a property right of tenure exists as it did in that case in which the employee was a " 'classified civil servant.' "

## STATUTE

Appellant also contends that as a matter of public policy his discharge was improper inasmuch as § 15–1–103, W.S.1977 (July 1980 Pamphlet), set terms for discharge which, he alleges, were not followed. In this case, the statute need not be considered as setting forth public policy; it prescribes that necessary for discharge of municipal employees.

Section 15–1–103(a)[2] read in pertinent part:

1. The Court elaborated on these requirements at pages 1495–1496 of 105 S.Ct.:

"* * * [T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. [Citation.]

"The essential requirements of due process * * * are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation.] The tenured public employee is entitled to oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story. [Citations.] To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."

2. Under the present statute, the governing body would have had to establish a more formal procedure. Section 15–1–103(a)(xxxvii) was amended with an effective date subsequent to the discharge in this case and to the discharge in *Carlson v. Bratton*, Wyo., 681 P.2d 1333 (1984), to read in pertinent part:

"(xxxvii) In addition to the appointed officers and employees provided by law, establish other positions as are necessary for the efficient operation of the city or town and:

"(a) The governing bodies of all cities and towns may:

\* \* \* \* \* \*

"(xxxvii) Appoint, in addition to the appointed officers and employees provided by law, other personnel as are necessary for the efficient operation of the city or town and:

"(A) Prescribe duties and rules of all appointees;

"(B) Determine working conditions or pay scales and supplementary benefits, as long as those provisions are not in conflict with existing statutes;

"(C) During an emergency or special conditions warranting, make additional temporary appointments;

"(D) *If any person is removed from office for incompetency, neglect of duty or otherwise for cause, specify the charges and provide the person removed an opportunity for a hearing on the charges;*

"(E) Make the cause of removal a matter of record; \* \* \* " (Emphasis added.)

We considered this statute in *Carlson v. Bratton*, Wyo., 681 P.2d 1333 (1984), and, while the statute wás inapplicable to the employee in that case, he being the chief of police, one of the "appointed officers and employees provided by law," we said at page 1339:

"Absent a discrimination amounting to a violation of civil rights, a person does not have tenure in employment unless such tenure is established by statute or by contract or by rules and regulations pursuant to statute or by rules and regulations having the force of a contract. One of the bargaining items in labor contracts concerns the causes for termination and the method of establishing the same. Adoption of the Little Norris-La-Guardia Act, § 27-7-101 et seq., W.S. 1977, was for the purpose of insuring the

\* \* \* \* \* \*

"(D) Specify by ordinance that if any person is removed from office for incompetency, neglect of duty or otherwise for cause, the charges against that person shall be specified

right of labor to organize and bargain for such items. Personnel rules of the several governmental units serve the purpose of contractual labor requirements. In all such, there is a *recognition* of a definite cleavage between management and labor. The positions listed in § 15-3-204, supra, are positions of management and the appointees thereto serve at the pleasure of the mayor."

■ Appellant was certainly not in a position of management. The statute sets forth the causes for termination and the method of establishing the same. It is applicable to employees under an at-will contract as well as those having a fixed-term contract. Appellant, thus, may have a tort action if his discharge was not in accordance with the statute.

■ Appellees argue that the provisions of § 15-1-103(a) are permissive inasmuch as they indicate that which the governing bodies of cities and towns "may" do. Appellees are correct in that appointment of "other personnel" may, in the discretion of the governing body of a city or town, be made or not, but once an appointment is made, the requirements of the subparagraphs of § 15-1-103(a)(xxxvii) are mandatory unless otherwise provided in such subparagraphs. Reading the statute as a whole, such legislative intent is apparent.

"Then, as this court has said (*Rasmussen v. Baker*, 7 Wyo. 117, 50 Pac. 819), 38 L.R.A. 773, 'the primary principle underlying an interpretation of constitutions or statutes is that the intent is the vital part, and the essence of the law.' And the rule requires that the instrument must be construed as a whole in order to ascertain its intent and general purpose and also the meaning of each part. [Citations.]" *Ross v. Trustees of University*, 31 Wyo. 464, 489, 228 P. 642 (1924).

and the person removed shall be provided an opportunity for a hearing on the charges under procedures established in the ordinance; \* \* \* "

If the statute were read as requested by appellees, the authorizations in the five subparagraphs of § 15–1–103(a)(xxxvii) would be superfluous. Without statutory authorization, the right to prescribe duties and rules and to determine working conditions and pay scales not in conflict with existing statutes would follow from the authority to appoint personnel. The authority to appoint personnel as necessary for the efficient operation of the city or town would, by its terms, be authority to make temporary appointments in emergency situations. To make it discretionary whether or not to require cause for discharge of an employee following specification of charges and hearing would be another superfluous provision. Such authority would exist even without statutory authorization. The same is true with reference to the authorization to make the cause of removal a matter of record. To give purpose and meaning to these five subparagraphs, they must be taken to be requirements once the appointments are made pursuant to § 15–1–103(a)(xxxvii). In construing statutes, we endeavor to give meaning to every word, clause and sentence to the end that no part is inoperative or superfluous. *Thomson v. Wyoming In-Stream Flow Committee,* Wyo., 651 P.2d 778 (1982).

■ Appellees also place emphasis on the words "removed from office" in § 15–1–103(a)(xxxvii)(D), and they contend that the provisions thereof apply only to "officers" as distinguished from other employees. Again a reading of such words in context with the entire statute reflects a contrary legislative intent, as does our holding in *Carlson v. Bratton,* supra.

## SUMMARY JUDGMENT

■ Before it can be said as a matter of law that appellant's discharge was not actionable, it must not have violated that set forth in § 15–1–103(a)(xxxvii)(D) [3]; i.e., if the discharge is for "incompetency, neglect

of duty or otherwise for cause," the charge must be specified, and there must be an opportunity for a hearing after discharge on the charges. If there is an issue of fact as to the existence of any one of these requirements, a summary judgment may not be rendered.

Rule 56(c), W.R.C.P., provides in part that a summary judgment

"* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

■ A summary judgment is proper only where there is no issue of material fact. *Kimbley v. City of Green River,* Wyo., 642 P.2d 443 (1982); *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977).

With reference to the first requirement of § 15–1–103(a)(xxxvii)(D), appellant was advised both at the time of discharge and at the hearing before the town council of the complaint and the identity of the complainant. Appellant and his fellow garbage man, Joseph W. Lambert, acknowledge in their depositions that there was a rule against scavenging and that it was made known to them at a meeting of garbage men. Lambert acknowledges taking a belt from the garbage of the complainant. Both Lambert and appellant state that appellant took nothing from that garbage. Appellant said he "flipped the ashes" with his hand to see if they were hot. Lambert testified that appellee Jim Dunham told him that appellant was discharged because he was with Lambert. He also testified "[t]hat he didn't want us going through the garbage any more, scavenging," and that the "main concern" in the rule was the loss of time involved. In their amended answer, appellees deny each instance in which appellant alleges the discharge to be for

---

**3.** We are not here concerned with the Wyoming Administrative Procedure Act, § 16–3–101 et seq., W.S.1977 (October 1982 Pamphlet), inasmuch as that Act pertains to procedures by an "agency," which by definition excludes the governing body of a city or town. Section 16–3–101(b)(i).

scavenging and assert that the discharge was for "rummaging, digging through, and/or looking through garbage," which was a prohibited act. There was no disagreement as to these facts.

"Scavenge" is defined in Webster's Third New International Dictionary (1971) to mean removing cast-off matter and also to mean searching for such matter; i.e., "to dislodge or gather and remove * * * from cast-off matter" and "to hunt in for wanted or usable material obtainable at no cost." With the rule against scavenging being for the purpose of avoiding lost time, searching through the garbage would be as much contrary to the purpose as would the removing of the desired material from the garbage. Appellant acknowledged that he had removed material from garbage at other times and had taken it home.

Another city council may have properly concluded that flipping through the ashes was not a scavenging act. It may have believed the purpose of such was truly to see if they were hot—for whatever difference that would make. It may not have been as concerned as this town council about time lost through scavenging. But this town council did conclude that appellant was scavenging contrary to the directive, and there were sufficient grounds for such a conclusion.

The record does not indicate an issue of fact relative to the existence of a rule against scavenging with both definitions, nor does it indicate that appellant was not fully advised of the charge against him and the basis for his discharge.

The record before us reflects that there is no issue of fact over the second requirement of § 15–1–103(a)(xxxvii)(D)—an opportunity for a hearing. When appellee Dunham discharged appellant, he informed appellant of the complaint which caused the discharge. Appellant did not deny the charge, but requested another chance. Later, appellant requested a hearing before the town council. At such hearing, he presented his position to the town

council and had others speak in his behalf. He was represented by counsel. The town council took the matter under advisement and agreed that the discharge was proper.

Since appellant was an employee at-will, he did not have tenure and was subject to discharge at any time without cause unless such discharge was in violation of § 15–1–103(a). The discharge was not in violation of such statute. The facts are not in dispute and the summary judgment of the trial court is affirmed.

ROSE, Justice, dissenting.

I would have reversed the summary judgment entered against appellant Kenneth Siebken because significant factual questions exist as to whether his discharge as a garbage hauler for the Town of Wheatland violated state statutes governing the removal of municipal employees.

As discussed in the majority opinion, certain rights attached to Siebken's employment by virtue of § 15–1–103(a)(xxxvii)(D) and (E), W.S.1977, which provided:

"(a) The governing bodies of all cities and towns may:

\*     \*     \*     \*     \*     \*

"(xxxvii) Appoint, in addition to the appointed officers and employees provided by law, other personnel as are necessary for the efficient operation of the city or town and:

\*     \*     \*     \*     \*     \*

"(D) If any person is removed from office for incompetency, neglect of duty or otherwise for cause, specify the charges and provide the person removed an opportunity for a hearing on the charges;

"(E) Make the cause of removal a matter of record."

This statute authorizes the town council to hire workers necessary for the efficient operation of the town and to remove these workers *for cause*, followed by notice and an opportunity for a hearing.[1] The post-

---

1. Because of these safeguards afforded by

§ 15–1–103(a)(xxxvii)(D) and (E), appellant's

termination hearing affords a discharged employee the opportunity to counter the allegations against him and to have his dismissal overturned if unsupported by cause. The cause of removal must be made a matter of record. We have said that these statutory rights affecting public employment apply to nonmanagerial employees, rather than to "appointed officers and employees provided by law," who typically hold policy-making positions and are subject to removal without cause. *Carlson v. Bratton*, Wyo., 681 P.2d 1333 (1984).

Pursuant to § 15–1–103(a)(xxxvii)(D), the town council of Wheatland conducted an informal hearing at its regular meeting on May 2, 1983. Siebken was given an opportunity to make a statement concerning the circumstances of his dismissal and to present witnesses and other evidence. The town council ultimately upheld his discharge, and appellant initiated this lawsuit.

Appellant's complaint alleges unlawful action by the town council, an entity not governed by the Wyoming Administrative Procedure Act, § 16–3–101 et seq., W.S. 1977. Section 16–3–101(b)(i), W.S.1977. Accordingly, the judicial-review provisions (§ 16–3–114) of that Act do not apply to the town council's decision, and Siebken had a right to a trial de novo, entailing an independent inquiry by the district court into the cause of his dismissal. See *City of Evanston v. Whirl Inn, Inc.*, Wyo., 647 P.2d 1378 (1982). The district court, however, determined that no statute or other provision restricted the town's right to dismiss Siebken at will and declined to consider the depositions, affidavits and other evidence relevant to a possible violation of § 15–1–103(a).

According to appellant's deposition, Jim Dunham, the Wheatland town clerk, had informed the garbage-collection crew in February, 1983, that scavenging or searching through the garbage would no longer be permitted. Siebken admitted that he had scavenged during his six and one-half

years on the job, but testified that he had stopped the practice after receiving the warning in February. Appellant described in his deposition the incident that precipitated his dismissal:

"Q What happened at Wickam's house?

    \*    \*    \*    \*    \*    \*

"A   \* \* \* We dumped some barrels, and there was some ashes in there, and I took my hand and flipped the ashes to see if they was hot or not.

"Q And you were at the back of the truck?

"A I was.

"Q And you dumped the barrel in the truck?

"A In the truck.

    \*    \*    \*    \*    \*    \*

"Q What was Joe Lambert doing during this time?

"A He was dumping barrels, too.

"Q Did he go through any of the trash at Wickam's house?

"A Not that I know of other than picking up that belt that was in the trash."

When the two men returned to the shop that afternoon, they were dismissed. Appellant testified:

"Q Did you talk to Dunham then when you went to the shop at three o'clock?

"A Yes, he told us we was let go.

"Q What else did he say?

"A That was it.

"Q He just said you are let go?

"A He said because of the scavenging we was let go. We had a report. The council wanted us fired.

"Q If you could, please, think back to that day and that conversation and tell me everything that he said and everything that you said from the time you first contacted Mr. Dunham?

"A Well, he just called us in and said it was the hardest thing he ever had to do, but he had to let us go, and I said why. Well, we had a complaint. He finally

employment contract was not a mere "at will" contract, and our discussion of at-will employment in *Rompf v. John Q. Hammons Hotels,*

*Inc.*, Wyo., 685 P.2d 25 (1984) has no application to the case at bar.

told us it was Wickams that made the complaint, and I said, 'God, I am going to lose my home and everything else. Give us another chance.' Can't do it; the council wants you fired. I told him about the ashes, that I had flipped some ashes is all I had done.

"Q You asked him for another chance?

"A Yes, I did.

"Q Did he say anything else?

"A Not that I can recall other than we was fired. I wanted to know if we should go empty the truck, and he said, no, he would rather we wouldn't. So I just went and got my stuff and left.

"Q What else did you say that you recall?

"A That's about it that I can recall.

"Q Do you recall what, if anything, Joe Lambert said?

"A Joe told him that I hadn't picked up anything and hadn't went through it."

Joe Lambert, appellant's co-worker, testified as to the circumstances surrounding their discharge:

"A Well, about just shortly after three o'clock we pulled into the shop down there for a coffee break, and we talked in the shop, and Jimmy Dunham was standing in the office there, and he stopped us as we were walking in, and he called Ken [Siebken] and I in there by ourselves, and he says—

"Q You were all alone?

"A Just Ken and I was in there, yes, at that time. And he says, 'I hate to do it,' he says, 'but I have got to let you go.' He said, 'Joe, has been here longer than I have, but I have just got to let you go.'

"And we had a load on the truck that was just about loaded, and we had four or five blocks to finish up, and we would've been through for that day, and I asked him, I says, 'Do you want us to take that out and unload it or not?'

" 'No,' he says, 'go on home.'

"Q Is that all he said?

"A That was it.

"Q Did he tell you why you were let go?

"A Yes.

"Q What did he say?

"A He said, 'I got a report you was scavenging through the junk, and you also took a belt.'

"And I says, 'Yes, I did.' I admitted it. I got the belt. But then after he had them all out of there, or Ken and I went on out, and he called a bunch of them in there I don't know how many it was in there, sanitation crews, and they was a-sitting there at the table, and Ken had already left, and I was a-sitting there, and I went back in and I met him.

"I says, 'Jim, why did you fire Ken?' I says, 'I got the belt.'

"He said, 'I fired him because he was with you. He was with you.'

"Now, I want to know where the man was supposed to be if he wasn't supposed to be with me. I would like to know."

Siebken's complaint alleges that several witnesses, including Ruby Wickham, addressed the town council on behalf of appellant. The complaint asserts further:

"20. THAT at the said meeting Ruby Wickam identified Joe Lambert as being the garbage man about whom she had complained, and stated that Joe Lambert's co-worker, the Plaintiff, had not been guilty in the incident of taking or scavenging for any items from her garbage which had been the basis of her complaint and led to the Plaintiff's discharge."

Appellees denied this allegation in their answer, but presented no affidavits or other evidence to refute the claim.

The evidence before the trial court presented a triable issue of fact as to whether appellant's discharge complied with the causation requirements of § 15-1-103(a). The trial court failed to consider this evidence because of its misconception concerning the applicability of § 15-1-103(a) to appellant's employment situation. A majority of this court, while recognizing the relevancy of § 15-1-103(a), nevertheless affirm the summary judgment, holding

that sufficient evidence supported the town council's finding of scavenging:

"Another city council may have properly concluded that flipping through the ashes was not a scavenging act. It may have believed the purpose of such was truly to see if they were hot—for whatever difference that would make. It may not have been as concerned as this town council about time lost through scavenging. But this town council did conclude that appellant was scavenging contrary to the directive, and there were sufficient grounds for such a conclusion." 700 P.2d at 1240.

Aside from the propriety of a conclusion which equates the testing of potentially ignitable material with a scavenging act, the sufficiency of the evidence to support the council's conclusion simply is not an appellate issue, where the district court was the trier of fact, obligated to examine the evidence in a trial de novo. I would have remanded this case to the district court for a full inquiry into the factual basis for appellant's charges.