**MOBIL COAL PRODUCING, INC., a Delaware corporation, Appellant (Defendant),**

v.

**Dale PARKS, Appellee (Plaintiff).**

No. 84–262.

Supreme Court of Wyoming.

Aug. 13, 1985.

Thomas D. Roberts of Morgan, Brorby, Price & Roberts, Gillette, and Maryann Walsh, Denver, Colo., for appellant.

Dwight F. Hurich of Preuit, Sowada & Hurich, Gillette, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This is an appeal by appellant-employer from a judgment of the district court awarding appellee-employee damages for wrongful discharge from employment. Four of the issues on appeal pertain to findings based on appellee's status as an "at will" employee. Appellant words the other two issues on appeal:

"If defendant's [appellant's] employee handbook is an employment contract, whether defendant [appellant] substantially complied with the contract in terminating plaintiff [appellee] for good cause based on plaintiff's [appellee's] safety violations."

"Whether plaintiff [appellee] by law or the terms of the defendant's [appellant's] employee handbook was entitled to a hearing prior to termination."

The provisions of appellant's employee handbook make appellee's employment to be other than "at will," and inasmuch as such provisions were not substantially complied with in termination of appellee's employment, we affirm.

## AT WILL EMPLOYMENT

The district court found appellee's employment by appellant to be "at will." It then inconsistently found the handbook to contain controlling provisions with reference to discharge procedure and hearings and with reference to creating an implied covenant of good faith and fair dealing.

■ Wyoming follows the common-law rule that either party may terminate an employment at will contract (one without a definite term) at any time for any reason or without reason, and that such is not violative of any implied covenant of good faith and fair dealing. *Siebken v. Town of Wheatland*, Wyo., 700 P.2d 1236 (1985); *Allen v. Safeway Stores, Incorporated*, Wyo., 699 P.2d 277 (1985); *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984); *Carlson v. Bratton*, Wyo., 681 P.2d 1333 (1984); *Lukens v. Goit*, Wyo., 430 P.2d 607 (1967); *Long v. Forbes*, 58 Wyo. 533, 136 P.2d 242, 158 A.L.R. 224 (1943); *Casper Nat. Bank v. Curry*, 51 Wyo. 284, 65 P.2d 1116, 110 A.L.R. 360 (1937).

Without more, appellee was an "at will" employee, subject to discharge at any time without cause. He was employed on March 15, 1982, by appellant as a mine technician, the title given to members of an hourly work force handling mining operations, maintenance and plant functions at a surface coal mine in Campbell County. His employment was not for a definite term. He was discharged on August 26, 1983, primarily for violations of safety requirements.

## HANDBOOK

However, in September 1982, six months after appellee was employed, appellant distributed a handbook to mine employees. It contained information under six sections, with each section containing subsections in number from five to nineteen.

In *Carlson v. Bratton*, supra, we said at page 1339:

"Absent a discrimination amounting to a violation of civil rights, a person does not have tenure in employment unless such tenure is established by statute or by contract or by rules and regulations pursuant to statute *or by rules and regulations having the force of a contract.* * * *" (Emphasis added.)[1]

■ The question here, then, is whether or not appellant's handbook set forth rules and regulations having the force of a contract, and, if so, did appellee violate the terms thereof. In this case the trial was to the court, and the court resolved both questions of law and questions of fact. Three-fourth's of the court's oral opinion from the bench (other than comments on damages) was concerned with the contents of the handbook. Although the court concluded that appellee was working under an "at will" contract, it found that appellee's discharge was improper inasmuch as appellant did not comply with the handbook's procedural requirements, and, in effect, it found appellant to be contractually bound by the provisions of the handbook. The court premised its general finding "for the plaintiff and against the defendant" on failure to comply with the handbook's requirements. A general finding and judgment carries with it every finding of fact which can reasonably and fairly be drawn from the evidence. *Burk v. Burzynski*, Wyo., 672 P.2d 419, 425 (1983). There was substantial evidence to support the finding that the handbook's provisions were appli-

---

1. The quotation from *Carlson v. Bratton*, supra, was also quoted in *Siebken v. Town of Wheat-land*, supra.

cable and were not followed by appellant. In determining whether evidence is sufficient to sustain the findings or judgment of the trial court, we assume the evidence in favor of the successful party to be true, give to it every favorable inference which may reasonably and fairly be drawn from it, and leave out of consideration the evidence of the unsuccessful party in conflict therewith. *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13, 17 (1984); *Anderson v. Bauer*, Wyo., 681 P.2d 1316, 1319 (1984).

■ The handbook did more than set forth the hours of work, pay scale, pension rights, promotion policy, etc. It addressed the very basis of an at will employment, i.e., the right of the employer to discharge the employee at any time, with or without cause. The handbook recites in part:

"The following rules of unacceptable conduct apply to all employees. Any employee who violates these rules subjects himself/herself to degrees of disciplinary action, up to and including termination. We will apply these rules in a fair and equitable manner.

"Some of the actions that will not be condoned at the Caballo Rojo Mine are as follows:

"excessive absenteeism or tardiness

"fighting

"theft

"gambling on company property

"falsification of records

"bringing intoxicating liquor or narcotic on company property

"coming to work in an unfit physical condition or under the influence of liquor or drugs

"drinking or using narcotics on company property, which includes the parking lot

"smoking in areas designated as non-smoking areas

"violation of safety rules

"bringing firearms or any type of explosive on mine site

"bringing televisions, electronic devices, or cameras onto the property

"using threatening or abusive language toward fellow employees or supervisors

"willfully damaging plant or personal property

"refusing or willfully failing to carry out proper instructions

"sleeping during working hours

"violating area work rules

"leaving the job without permission

"being convicted of felony criminal offense

"soliciting for any purpose during working time

"three (3) days unreported absence (considered a 'quit without notice')

"The above general rules cannot possibly cover all situations that arise. Thus, all employees are expected to meet a reasonable standard of conduct and work performance.

"Employees having job-related problems will receive fair and objective consideration—without fear of reprisal. This includes problems concerning salary, supervision, discipline, application of company policy, and any other working conditions.

"You are encouraged to talk on an informal basis to your immediate supervisor first about any job-related problem. However, should you find this procedure unacceptable, you should follow the steps in Caballo Rojo's Fair Treatment Policy described in this handbook.

"Our Employee Relations Program at Caballo Rojo is based on each employee accepting certain responsibilities. Our work is of a technical nature and very exacting, placing upon each employee the responsibility for a high degree of self-discipline. Thus, the primary source of discipline at the Caballo Rojo Mine is *Self-Discipline.*

"Caballo Rojo adheres to a policy of progressive discipline tempered by the seriousness of the offense. Any employee may be subject to disciplinary action for reasons including, but not limited to, unsatisfactory work performance (e.g. carelessness in handling materials, unatten-

tion to duty) or breach of conduct (e.g., overstaying rest or lunch period, excessive absenteeism, disregard of safety, failure to carry out the supervisor's instructions). Each case will be reviewed on its individual merits, as well as to achieve overall consistency throughout the mine.

"The nature of discipline will depend upon the nature of the offense and/or the employee's cumulative record. Disciplinary suspension subject to termination will be imposed when the seriousness of an individual offense or the employee's record of prior rule infractions warrants such action.

"The normal procedure for progressive discipline is as follows:

"*Step 1—Counseling*

"The Supervisor will make the employee aware of the deficiency and documents the conversation with employee, sending a copy to Employee Relations.

"*Step 2—Counseling*

"Should another incident arise, the supervisor will make the employee aware of the deficiency as well as pointing out to the employee that this is the second counseling session. This conversation is also documented and a copy forwarded to Employee Relations.

"*Step 3—Written Reprimand*

"In the case of further incidents, the employee will receive a written reprimand.

"*Step 4—Three-Day Suspension*

"The employee who has another incident of poor workmanship or violation of Company rules and regulations, will subject himself/herself to a three-day suspension.

"*Step 5—Discharge*

"If another incident occurs, the specified rule violation along with the employee's prior record will be reviewed by the Mine Manager, and the employee's services may be terminated." (Emphasis in original.)

Not only does the tenor of the foregoing reflect the necessity for the existence of cause for discharge, but it specifically re-

quires such. The essential requirement of an at will employment is thus missing.

 This is not to say that the existence of a handbook or employer's manual will make employment other than at will in all instances. Each case must be considered on its own merits. Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. Normally, the construction and interpretation of a contract is for the court as a matter of law. *Rouse v. Munroe*, Wyo., 658 P.2d 74, 77 (1983); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980). If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact. *Goodman v. Kelly*, Wyo., 390 P.2d 244, 247 (1964).

We also noted in *Carlson v. Bratton*, supra, 681 P.2d 1339:

"* * * One of the bargaining items in labor contracts concerns the causes for termination and the method of establishing the same. Adoption of the Little Norris-LaGuardia Act, § 27–7–101 et seq., W.S.1977, was for the purpose of insuring the right of labor to organize and bargain for such items. * * *" (See footnote 1).

The handbook in this case reflects an intention to provide that usually contained in a labor agreement. It says:

"Mobil Coal Producing, Inc., Caballo Rojo Mine, recognizes that labor unions may have been necessary in the past and may be necessary in *other* companies. However, we are committed to maintaining an environment of mutual trust, understanding, and cooperation. We believe that individual consideration on employee-supervisor matters provides the best method for satisfying the employ-

ees' and the Company's needs. We do not believe that a union representing the employees can improve on that one-to-one relationship.

"It is policy that Caballo Rojo Mine will develop and maintain effective employee relations policies and programs. Each supervisor is responsible to administer these policies, so that the human dignity of each employee is preserved and all employees are assured security and equal opportunity for advancement.

"We plan to provide a safe work environment; competitive wages and benefits; free and open communications; and training which improves employees' skills and advancement opportunities, and ensures efficient operation of the mine.

"We realize that there will be problems and misunderstandings. We encourage our employees and supervisors to resolve these differences on an informal basis. However, for those rare occasions when differences cannot be resolved, we have a fair treatment procedure where employees will have the opportunity to be heard, without fear of recrimination or penalty.

"While we take no position on whether unions are good or bad, we believe union representation is unnecessary for employees to enjoy job security, career opportunities, fair and equitable treatment, and competitive wages and benefits." (Emphasis in original.)

The handbook's provisions change the appellant's unfettered right to discharge appellee at any time and without cause. Such provisions create an expectation on the part of an employee that they will be followed, and they induced appellee to continue his employment with appellant. Appellant "secures an orderly, cooperative and loyal work force," *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 892 (1980). Benefit to the promisor is sufficient consideration for a contract. *Laibly ·v. Halseth,* Wyo., 345

P.2d 796, 799 (1959); *Houghton v. Thompson,* 57 Wyo. 196, 115 P.2d 654, 658 (1941).

Other jurisdictions have recognized that an employer's personnel manual or handbook may constitute a term of an employment contract, e.g., *Leikvold v. Valley View Community Hospital,* 141 Ariz. 575, 688 P.2d 201 (1983); *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 33 A.L.R.4th 110 (1982); *Walker v. Northern San Diego County Hospital District,* 135 Cal.App.3d 896, 185 Cal.Rptr. 617 (1982); *Toussaint v. Blue Cross & Blue Shield of Michigan,* supra.

■ The next question, then, is whether or not appellant performed under the contractual provisions of the handbook. The trial court found that it did not. There was evidence to support the finding. The following occurred with reference to the five-step disciplinary procedure set forth in the handbook, supra:

Step 1—Counseling: On March 19, 1982, appellee received counseling for having operated equipment negligently, which operation resulted in damage to the equipment.

Step 2—Counseling: In July 1983, appellee received counseling for erratic work performance and general attitude.

Step 3—Written Reprimand: On August 17, 1983, appellee was given a written reprimand for reporting late to work on August 1 and 2, 1983. His job was to perform routine procedure on the equipment so that shift operations could begin on· time. On August 22, 1983, appellee was given another written reprimand for reporting late to work on August 21, 1983.

Step 4—Three-day Suspension: On August 22, 1983, appellee was suspended for three days without pay for unsafe operation of equipment on that date based on his having driven a quarter-million to half-million pound haul truck too fast on slippery roads, tailgating other trucks, losing control of his· truck on two occasions causing it to strike a berm [2], failing to inspect the truck after the incidents, and failing to report the incidents.

2. A protective dirt barrier.

Step 5—Discharge: The trial court found that appellee was discharged on August 26, 1983, without the occurrence of "another incident."

When appellee was given the three-day suspension for unsafe operations on August 22, 1983, his supervisors were unaware that he had violated safety standards the day before by parking a dozer so as to partly block the road, causing truck traffic to stop. Appellee's discharge on August 26, 1983, was premised on the August 21, 1983 safety violation as being the occurrence of another incident cumulative to that for which action was taken in the first four steps of the discipline procedure. The trial court's comment in finding that Step 5 was not afforded to appellee was:

> "I don't see where that was done here at all, and I don't go along with the idea that 'another incident occurs' is something that's happened before the suspension. * * * "

Appellant argues that the progressive disciplinary procedure set forth in the handbook is described as the "normal" procedure, and that it is not applicable to serious infractions which warrant discharge without following the procedure. This may be so. Certainly, the procedure would be unnecessary to discharge an employee attempting to set fire to buildings on the premises—as an example of behavior extremely unacceptable.[3] However, in this case appellant did purport to use the handbook procedure in discharging appellee. At a meeting with three supervisors, appellee was advised of the intended discharge. The matter was discussed with him, and he was given an opportunity to comment.[4] As provided in the handbook, the mine manager reviewed the decision and appellee was discharged. Appellant's decision to follow the handbook procedure indicates that the infractions were of the

nature for which the procedure was designed.

Another trier of fact may have found that the handbook procedure was substantially complied with in this instance, but there is evidence to support the finding that it was not and that appellant intended appellee's discharge to be pursuant to such procedure.

The trial court's interpretation of the handbook language to the effect that Step 5 could not be used to discipline for an incident which occurred before imposition of the discipline under Step 4 is correct. The language of the handbook contract reflects such intention. Step 2 is administered "should another incident arise." Step 3 is administered "in case of further incidents." Step 4 is used if there is "another incident." And the language of Step 5 recites "if another incident occurs." We repeat, appellant opted to effect the discharge under the progressive discipline procedure. If it had discharged appellee for an infraction, newly discovered, alleged to be serious enough to require action other than under the progressive discipline procedure, the trial court may have agreed that the transgression was sufficiently serious and that the progressive discipline procedure was unnecessary. But that was not the case.

There was evidence sufficient to support the trial court's application of the handbook procedure to the discharge of appellee by appellant, and to support its finding that the procedure was not followed.

Affirmed.

ROSE, Justice, specially concurring.

I fully agree with the reasoning and holding in the majority opinion that the employee handbook in this case rendered appellee's employment contract other than an at-will contract. I also agree that the

---

**3.** Most rules and regulations, manuals, handbooks, etc. separate serious infractions such as insubordination, dishonesty, etc. from those requiring progressive disciplinary action before discharge.

**4.** Our decision makes unnecessary an inquiry into whether or not the requirements of *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) re pretermination notice and opportunity to be heard were complied with in this instance.

evidence supports the trial court's findings that the appellant/employer failed to comply with the handbook provisions and that, therefore, appellee's discharge was improper. I write separately because of my concern that the following statement in the majority opinion is not supported by the cited cases:

"Wyoming follows the common-law rule that either party may terminate an employment at will contract (one without a definite term) at any time for any reason or without reason, and that such is not violative of any implied covenant of good faith and fair dealing." 704 P.2d at 704.

In *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984), we reserved a decision on whether termination of employment under an at-will contract might, under certain circumstances, violate an implied covenant of good faith and fair dealing. We observed that a number of courts in other jurisdictions have recently recognized such implied covenants. *Mitford v. de Lasala*, Alas., 666 P.2d 1000 (1983); *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980); *Fortune v. National Cash Register Company*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Gates v. Life of Montana Insurance Company*, Mont., 638 P.2d 1063 (1982). These courts have looked at the circumstances surrounding the employee's dismissal and the duration of his employment in determining whether the employee stated a valid claim for breach of contract. Since the employee's evidence in *Rompf v. John Q. Hammons Hotels, Inc.* failed to suggest a violation of the good-faith duty imposed upon employment relationships in other jurisdictions, we reached no decision concerning the viability of the doctrine in this state.

The other cases cited in the majority opinion do not address the issue of implied covenants in at-will employment contracts. However, the cited cases of *Siebken v. Town of Wheatland*, Wyo., 700 P.2d 1236 (1985), and *Allen v. Safeway Stores, Incorporated*, Wyo., 699 P.2d 277 (1985), as well as the holding and rationale in the case at

bar establish that this court is willing to consider the circumstances surrounding an employee's discharge under a purportedly at-will employment contract.